UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHELLE HEINKEL, by and through her
parent and next friend DEBRA
HEINKEL,

               Plaintiff,

v.                           Case No. 2:04-cv-184-FtM-33SPC

SCHOOL BOARD OF LEE COUNTY, FLORIDA,

               Defendant.
_____/

## ORDER

This cause comes before the Court pursuant to Plaintiff's Amended Motion and Memorandum for Attorney's Fees and Costs (Doc. # 121) filed on April 19, 2007. The school board filed a response on May 7, 2007. (Doc. # 124.) Heinkel requests an award of attorney's fees under 42 U.S.C. § 1988. That section "allows for a fee award to the 'prevailing party' in suits brought for the vindication of civil rights." Smalbein v. City of Daytona Beach, 353 F.3d 901, 903 (11th Cir. 2003). The school board opposes Heinkel's request. First, the school board claims that Heinkel was not the prevailing party and is thus not entitled to attorney's fees at all. Second, the school board argues that, even if Heinkel is entitled to attorney's fees, she is not entitled to the amount of fees she requests. Because the Court finds that Heinkel was the prevailing party, the Court awards fees to Heinkel. However, for

the reasons stated below, the Court finds it appropriate to reduce the fee award from the amount Heinkel requests.

## I.   Background

"Freedom to Learn is a Florida non-profit organization that sponsors an annual Day of Remembrance on which students distribute literature, wear t-shirts, and remain silent throughout the day 'in honor of the 45 million unborn and the countless women who have been harmed by abortion.'"  (Doc. # 71, at 3.)  In April 2003, Freedom to Learn informed the school board that students intended to distribute literature at school.  (Doc. # 99, at 4.)  The school board responded by providing Freedom to Learn with a copy of the school board's policy on distribution of written materials at school.  (Doc. # 99, at 4.)  This policy required that materials be submitted in advance for approval.  (Doc. # 99, at 4 n.1.)  It also prohibited distribution of materials including "political, religious or organizational symbols."  (Doc. # 99, at 4 n.1.) Freedom to Learn provided the Lee County school superintendent with copies of the literature.  (Doc. # 99, at 5.)  The superintendent found that the literature would be disruptive, and accordingly denied permission to distribute it.  (Doc. # 99, at 5.)

Heinkel was a student at Cypress Lake Middle School in 2004. In March 2004, she filed this lawsuit seeking an injunction that would prevent the school board from applying its policy to prohibit her from distributing literature during the 2004 Day of

2

Remembrance.  (Doc. # 99, at 6.)  On April 14, 2004, the Court denied Heinkel's request for a preliminary injunction.[1]  (Doc. # 25.)  That same day, Heinkel first sought permission to distribute literature opposing abortion.[2]  (Doc. # 99, at 6.)  The superintendent promptly denied the request, stating that the literature "would tend to create a substantial disruption in the school environment." (Doc. # 99, at 7.)  Heinkel then amended her complaint to add those allegations.

On July 1, 2005, the Court entered an order granting the school board's motion for summary judgment, and denying Heinkel's motion for summary judgment.  (Doc. # 71.)  Heinkel appealed, and on August 22, 2006, the Eleventh Circuit handed down an opinion reversing the Court on the ground that the school board's policy was facially unconstitutional.  (Doc. # 99, at 12.)  Specifically, the Circuit Court held that two features of the policy made it unconstitutional.  First, the policy impermissibly prohibited all religious and political symbols without requiring a reasonable belief that such expression would cause a substantial disruption. (Doc. # 99, at 11.)  Second, the policy failed to contain a time limit for the school board's decision to grant or deny a request to

---

[1]The Court noted that Heinkel brought only a facial challenge to the school board's policy.  (Doc. # 25, at 12–13.)

[2]By seeking permission to distribute certain materials, Heinkel thus cleared the way for an as-applied challenge to the school board's policy.

distribute literature.  (Doc. # 99, at 11.)  The Eleventh Circuit affirmed the other parts of this Court's Order.

Because it found the school board's policy facially unconstitutional, the Eleventh Circuit remanded the case with instructions for this Court to conduct further proceedings consistent with the appellate opinion.  (Doc. # 99, at 15.)  The opinion explained that the school board's facially unconstitutional policy cannot be used.  (Doc. # 99, at 12.)  Following the appellate court's instructions, this Court entered an order enjoining the school board from using its policy.  (Doc. # 118, at 2.)  Judgment was entered on April 3, 2007, declaring the school board's policy unconstitutional and enjoining its enforcement.  (Doc. # 120.)

Armed with her partial victory, Heinkel filed the instant motion for attorney's fees.[3]  (Doc. # 121.)

## II.  Standard of Decision

In certain suits brought to vindicate civil rights, the district court has discretion to award attorney's fees to the

---

[3]In fact, Heinkel filed several motions for attorney's fees. Before the Eleventh Circuit's opinion was even filed on the docket in this case, Heinkel filed her motion for attorney's fees (Doc. # 93).  She also filed the motion simultaneously in the appellate court.  (Doc. # 93, at 1 n.1.)  The Eleventh Circuit then partially decided and remanded the motion to this Court.  (Doc. # 105.)  This Court then directed Heinkel to modify her motion for attorney's fees to account for the Eleventh Circuit's partial decision.  (Doc. # 119.)  Heinkel filed her modified motion (Doc. # 121) on April 19, 2007.

prevailing party.  42 U.S.C. § 1988(b).  However, that discretion is limited.  "A court's discretion to deny such fees is . . . exceedingly narrow.  Indeed, absent special circumstances that would render an award unjust, a prevailing plaintiff under § 1988 should be awarded fees as a matter of course."  Solomon v. City of Gainesville, 796 F.2d 1464, 1466 (11th Cir. 1986) (internal citations and quotation marks omitted); accord Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) ("[A] prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" (quoting S. Rep. No. 94-1011, at 4 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5912)); Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1509, 1513 (11th Cir. 1993); cf. Farrar v. Hobby, 506 U.S. 103, 109 (1992) ("Liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against . . . , § 1988 does not authorize a fee award against that defendant.")  By the same token, no award should be given to a plaintiff who does not prevail.  Farrar, 506 U.S. at 109.

Where the plaintiff has prevailed, the court must then decide the "lodestar" of what a reasonable fee would be.  See Atlanta Journal & Constitution v. Atlanta Dep't of Aviation, 442 F.3d 1283, 1289 (11th Cir. 2006).  The court calculates this figure by multiplying the number of hours reasonably expended in the

5

litigation by the reasonable hourly rate for such service.  Id.
Finally, the court may adjust the lodestar figure to account for
the level of success the plaintiff achieved in the litigation.  Id.
Thus, when presented with a motion for attorney's fees under §
1988, the court conducts a three-step inquiry.  Id.  First, it
determines whether the plaintiff has prevailed; then, it calculates
the lodestar figure; and last, it adjusts this lodestar figure to
reflect the level of the plaintiff's success.  Id.  The Court
addresses each question in turn.

## III. Discussion

### A.   Heinkel Was the Prevailing Party

In Farrar v. Hobby, the Supreme Court recognized that it uses
a "generous formulation" in determining whether a plaintiff is a
prevailing party for purposes of awarding attorney's fees.[4]  506
U.S. 103, 109 (1992).  After reviewing its past decisions on the
matter, the Court articulated this generous standard:

---

[4]Such a generous standard is necessary to further Congress'
purpose in enacting § 1988.  This purpose was to maintain vigorous
private enforcement of civil rights laws by ensuring that
plaintiffs may recover what it costs them to enforce these laws in
court, see Hensley v. Eckerhart, 461 U.S. 424, 444-46 (1983)
(Brennan, J., dissenting) (explaining that Congress intended to
ensure an appropriate level of enforcement without expanding the
public enforcement bureaucracy, and therefore found it necessary to
reimburse private parties for the costs they incur in enforcement),
and by ensuring that such plaintiffs can find adequate legal
counsel, see id. at 447-50 (explaining that fee awards must be
large enough to induce counsel to represent such plaintiffs, even
though such plaintiffs will rarely recover monetary relief at the
level normally recovered in private litigation).

> [T]o qualify as a prevailing party, a civil rights
> plaintiff must obtain at least some relief on the merits
> of his claim.  The plaintiff must obtain an enforceable
> judgment against the defendant from whom fees are sought,
> or comparable relief through a consent decree or
> settlement.  Whatever relief the plaintiff secures must
> directly benefit him at the time of the judgment or
> settlement. . . .  In short, a plaintiff "prevails" when
> actual relief on the merits of his claim materially
> alters the legal relationship between parties by
> modifying the defendant's behavior in a way that directly
> benefits the plaintiff.

Id. at 111–12 (internal citations omitted).

This standard is ordinarily satisfied where a plaintiff obtains injunctive relief on the merits.  Virdi v. Dekalb County Sch. Dist., 216 F. App'x 867, 871 (11th Cir. 2007).  In such a case, the plaintiff has obtained relief on the merits when the defendant's behavior is modified.  Thus, the only question is whether the modification directly benefits the plaintiff.  See Farrar, 506 U.S. at 109.  If the court finds that the plaintiff is "reasonably likely to have some continuing relationship with the defendant," Virdi, 216 F. App'x at 871, the court should find that the injunction directly benefits the plaintiff, id. at 870–71.

> [W]here the plaintiff has properly obtained an injunction
> and where there is clear record evidence supporting a
> reasonable likelihood of a future relationship with the
> defendant, it is inappropriate for a district court to
> deny prevailing status by speculating about whether the
> plaintiff is certain to take advantage of the changed
> legal landscape.

Id. at 872.  The very fact that an injunction was entered is strong evidence that the injunction directly benefitted the plaintiff.  Id. at 871.  "An injunction is not lightly entered.  To have

7

Article III standing to pursue injunctive relief, even against violations of the Constitution, a plaintiff must have more than a mere hypothetical grievance: he or she must have an injury in fact that is capable of being redressed by the injunction." Id.

In this case, Heinkel secured an injunction modifying the school board's behavior. (Doc. # 118.) The injunction forbade the school board from enforcing its unconstitutional written materials distribution policy. (Doc. # 118.) This injunction directly benefitted Heinkel. Students in Lee County public schools were governed by the unconstitutional policy, both as potential distributors of written materials and as potential recipients. Thus, the invalidation of the policy directly benefitted not only Heinkel but all students in those schools. Accordingly, Heinkel was the prevailing party in this litigation.

The school board argues to the contrary. First, it asserts that Heinkel's victory did not achieve a direct benefit. The board hypothesizes that Heinkel's primary goal in bringing her lawsuit was to distribute her literature. (Doc. # 124, at 8.) Because the school board retained the right to prevent Heinkel from distributing the literature, Heinkel won only a technical victory insufficient to support prevailing party status. (Doc. # 124, at 8.) The school board argues that the invalidation of the policy is not a change in the school board's behavior that directly benefits Heinkel. The board hints this is true because, in denying Heinkel

8

permission to distribute the literature, the school board relied not on its policy but on a finding that the literature would create a substantial disruption in the school environment. (Doc. # 124, at 8-9.) Thus, even without its policy, the school board could keep Heinkel from distributing her literature. As a result, the school board argues, Heinkel was not a prevailing party.

The Court disagrees. First, inasmuch as the school board argues that Heinkel did not receive any direct benefit, the school board is mistaken. The school board's policy prohibited distribution of literature containing religious or political symbols, regardless of whether the school board had a reasonable belief that such literature would create a substantial disruption (Doc. # 99, at 11.) This policy thus prohibited religious or political literature both where the school board might reasonably forecast a substantial disruption, and where the school board cannot reasonably forecast a substantial disruption. By securing an injunction against the enforcement of this policy, Heinkel opened Lee County public schools to religious and political literature as to which the school board cannot reasonably forecast a substantial disruption. This is a direct benefit to all Lee County public school students, including Heinkel.

Second, inasmuch as the school board argues that Heinkel failed to prevail because she lost the primary goal of the case, the Supreme Court rejected this argument in <u>Texas State Teachers</u>

Ass'n v. Garland Independent School District, 489 U.S. 782 (1989). In Garland, the Supreme Court invalidated the "central issue" test previously applied by some appellate courts. See id. at 790. Under that test, courts asked whether the plaintiff had prevailed on the central issue in the litigation and achieved the primary relief sought. Id. at 784. This test "focus[ed] on the subjective importance of an issue to the litigants," and therefore "ask[ed] a question which is almost impossible to answer." Id. at 791. When it rejected this test, the Supreme Court made clear that the prevailing party inquiry did not involve an evaluation of the subjective importance of an issue to the litigants.

The school board proposes to revive this evaluation in a roundabout way. Essentially, the school board advocates making the central issue test a part of the analysis of whether the plaintiff achieved a direct benefit. The board argues that, because Heinkel lost the primary goal of her lawsuit, she achieved no direct benefit. Therefore, she was not the prevailing party. This is just another formulation of the subjective evaluation rejected in Garland. Following the Supreme Court's teaching, this Court declines to apply a subjective evaluation to the question of whether Heinkel achieved a direct benefit.

The school board makes one further unsuccessful effort to persuade the Court that Heinkel did not prevail in this litigation. Citing dicta from Garland, the board asserts that Heinkel's victory

10

was so insignificant that it cannot support prevailing party status. (Doc. # 124, at 8.) In Garland, the Supreme Court opined that a plaintiff would not qualify as the prevailing party merely by obtaining a declaration that a policy was unconstitutionally vague, where there was no evidence that the policy had ever been applied to the plaintiff. 489 U.S. at 792. The school board reads this statement to mean that a plaintiff does not prevail when a court merely invalidates a policy that had not harmed the plaintiff. The board explains that Heinkel was never harmed by the policy, so all she achieved was the invalidation of a policy that never injured her. (Doc. # 124, at 9.) Thus, Heinkel's victory was insignificant under the Garland dictum and could not support prevailing party status. (Doc. # 124, at 9.)

A more apt interpretation of the Garland statement, however, is that a plaintiff does not prevail when all the court does is declare a policy unconstitutional, in circumstances such that there is little likelihood the policy will ever be applied to the plaintiff. The Supreme Court itself adopted this reading in Farrar v. Hobby, 506 U.S. 103 (1992). First, the Court examined its holding in Rhodes v. Stewart, 488 U.S. 1 (1988). Farrar, 506 U.S. at 110. In that case, two prisoners had secured a declaratory judgment against prison officials. Id. By the time judgment was entered, however, one of the prisoners had died and the other had been released. Id. As a result, "[w]hatever modification of

11

prison policies the declaratory judgment might have effected could not in any way have benefited either plaintiff, one of whom was dead and the other released." _Id._ (quoting _Rhodes_, 488 U.S. at 4) (internal quotation marks omitted). The _Farrar_ Court then explained that the _Garland_ statement was an example of the _Rhodes_ rule: "The deficiency in [the hypothetical victory from the _Garland_ statement] is identical to the shortcoming in _Rhodes_. Despite winning a declaratory judgment, the plaintiffs could not alter the defendant['s] behavior toward them for their benefit." _Id._ at 113.

It is clear that this case does not fall within the _Rhodes_ rule, and thus the _Garland_ statement does not help the school board. Heinkel has not merely secured a declaratory judgment invalidating a policy that would never be applied to her anyway. Instead, she secured an injunction prohibiting the school board from enforcing its unconstitutional policy in the future. Unlike the plaintiffs in _Rhodes_ or the hypothetical plaintiffs in the _Garland_ statement, Heinkel has altered the school board's behavior towards her for her benefit.

**B.   Calculation of the Lodestar Figure**

Having concluded that Heinkel was the prevailing party in this case, the Court now turns to the second step in the three-part inquiry. The Court now determines the lodestar fee. This figure is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly

rate." <u>ACLU v. Barnes</u>, 168 F.3d 423, 427 (11th Cir. 1999); <u>accord</u> <u>Dillard v. City of Greensboro</u>, 213 F.3d 1347, 1354 (11th Cir. 2000). This is a two-part inquiry requiring that the Court first determine how many hours were reasonably expended in the litigation, and second determine the reasonable hourly rate for such work. <u>See</u> <u>Barnes</u>, 168 F.3d at 436.

### 1. Hours Reasonably Expended in this Litigation

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours . . . ." <u>Barnes</u>, 168 F.3d at 427. The applicant must exercise billing judgment, excluding hours that are "excessive, redundant, or otherwise unnecessary." <u>Id.</u> at 428 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)). Where the applicant has failed to exercise such judgment, a court must cut excessive hours from the fee application. <u>Id.</u> In deciding whether particular hours were excessive or reasonably expended, courts look to the concept of "billable hours." <u>Perkins v. Mobile Hous. Bd.</u>, 847 F.2d 735, 738 (11th Cir. 1988). Courts thus ask if hours represent "work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue." <u>Id.</u> In asking this question, courts do not lightly second-guess the hours worked by the attorney in the case: "Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the

time claimed is obviously and convincingly excessive under the circumstances." Id. Moreover, "[b]ecause reducing the hours claimed requires the court's precision, the law in this circuit commands that both the proof of the hours spent in litigation and any corresponding objections posed be voiced with a similar exactitude." Duckworth v. Whisenant, 97 F.3d 1393, 1397 (11th Cir. 1996).

In addition to cutting excessive hours from the lodestar calculation, courts must also cut hours spent on "discrete and unsuccessful claims." Duckworth, 97 F.3d at 1397. Claims are discrete where they are "distinctly different," Hensley, 461 U.S. at 434, and "are based on different facts and legal theories," id. Thus, where "the claims on which the plaintiff did not prevail and the claims on which he did prevail were 'distinctly different claims . . . based on different facts and legal theories,' the court cannot award any fee for services on the unsuccessful claims." Popham v. City of Kennesaw, 820 F.2d 1570, 1578 (11th Cir. 1987) (quoting Hensley, 461 U.S. at 434-35). This is because "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." Hensley, 461 U.S. at 435.

However, claims are not discrete where they "involve a common core of facts or [are] based on related legal theories." Hensley,

461 U.S. at 435.   Hours reasonably expended on such related claims should be included in the computation of the lodestar figure, though the plaintiff did not prevail on all claims.   <u>Lambert v. Fulton County</u>, 151 F. Supp. 2d 1364, 1370 (N.D. Ga. 2000); <u>see also Popham</u>, 820 F.2d at 1578-79 (recognizing that hours reasonably spent on unsuccessful, related claims must be part of the lodestar calculation in the first instance; though fee can then be adjusted downward to account for limited success).   Essentially, such related claims are not appropriately treated as raised in separate lawsuits.   <u>Cf.</u> <u>Hensley</u>, 461 U.S. at 435.

As an initial matter, Heinkel has satisfied her burden of documenting the hours her attorneys expended on this case.   (<u>See</u> Doc. # 122-2.)   Heinkel represents that her attorneys expended a total of 494.5 hours.   (Doc. # 121, at 2.)   This consists of 157.9 hours by attorney Mathew Staver, 188.1 hours by attorney Erik Stanley, 123.6 hours by attorney Joel Oster, 0.6 hours by attorney Anita Staver, 12.1 hours by a law clerk, and 13.4 hours by paralegal Lynette Campbell.   (Doc. # 121, at 2.)   Heinkel has filed a detailed description of the work represented by these hours. (Doc. # 122-2.)   Furthermore, her attorneys affied that their work on this litigation in fact took the time claimed.   (<u>E.g.</u> Doc. # 122, at 11; Doc. # 123, at 6.)   As a result, the Court will cut specific hours only where it "appear[s] that the time claimed is obviously and convincingly excessive under the circumstances."

Perkins v. Mobile Hous. Bd., 847 F.2d 735, 738 (11th Cir. 1988).

The school board's first challenge to the number of hours Heinkel claims does not argue that certain hours were excessive -- that is, not properly billable. Instead, the school board first challenges Heinkel's claimed hours on the theory that Heinkel's facial challenge to the school board's policy was separate and discrete from her as-applied challenge. (Doc. # 124, at 14.) The school board places great weight on the fact that the facial challenge involved only a question of law and did not require significant factual development, while the as-applied challenge did require factual development. (Doc. # 124, at 14-15.) Because the facial challenge did not rely on facts at all, the school board argues that the facial challenge could not share a common core of facts with the as-applied challenge. As a result, the board submits, the two claims are discrete and the Court must exclude from the lodestar computation any hours spent on the as-applied challenge.

The Court rejects this argument. Even assuming the two challenges do not share a common core of facts, they are nonetheless based on related legal theories. In fact, the school board does not even argue that they are not, perhaps recognizing that such an argument would strain credulity. (See Doc. # 124, at 14-15.) As a result, the Court finds that the two challenges were based on related legal theories. Claims are not discrete when they

16

"involve a common core of facts <u>or</u> [are] based on related legal theories."  <u>Hensley</u>, 461 U.S. at 435 (emphasis added).   Thus, claims must be both factually and legally unrelated before they will be treated as discrete.   Here, Heinkel's claims were based on related legal theories; therefore, they are not discrete.   In short, Heinkel's two challenges to the school board's policy are not so unrelated that they are properly treated as two separate lawsuits.   Consequently, the Court will not cut from the lodestar computation those hours that were spent on the as-applied challenge.

The school board next challenges certain of Heinkel's claimed hours as excessive.   The board points to five categories of activities where it believes Heinkel's attorneys billed excessive hours.   First, the board identifies that Heinkel's attorneys spent sixty-nine hours conducting legal research.   According to the board, this "contradicts [the attorneys'] claim of unmatched expertise in constitutional law."[5]   (Doc. # 124, at 16.)   The board notes that Heinkel's attorneys have litigated numerous constitutional cases.   The board hypothesizes that Heinkel's

---

[5]To the extent that the board is arguing that Heinkel's attorney's have not handled this matter efficiently, its argument should be addressed to the attorneys' billing rates rather than their claimed hours.   <u>See</u> <u>Perkins v. Mobile Hous. Bd.</u>, 847 F.2d 735, 738 (11th Cir. 1988) ("[W]here the court believes that the matter has not been handled efficiently, the court may reflect that fact by decreasing the hourly rate to the market rate charged by lawyers of less skill and experience.").

attorneys may be attempting to collect fees for research conducted in some of those prior cases. (Doc. # 124, at 16.) Accordingly, the board suggests that the Court reduce Heinkel's claimed hours by half. The Court declines this suggestion because it does not appear that these hours are obviously and convincingly excessive under the circumstances.

Second, the board claims Heinkel's attorneys spent 33.4 hours on clerical work for which a reasonable attorney would not bill his client at attorney rates. The board compiled a spreadsheet listing hours by category. (Doc. # 124-10.) The Court has reviewed this document and compared it to the billing records (Doc. # 122-2) filed by Heinkel. By the Court's calculation, the sum of all time entries identified by the board as clerical is only 11.3 hours. Of these, the Court identifies 1.1 hours that must be cut. Heinkel's attorneys claimed their paralegal spent 2.2 hours on July 27, 2004, calendaring eleven deadlines in the case. (Doc. # 122-2, at 16.) This is obviously and convincingly excessive under the circumstances. The Court finds that a reasonable time expenditure for that task is 1.1 hours. For that reason, the Court excludes 1.1 hours from its calculation of the lodestar figure.

Third, the school board points out that Heinkel's lawyers spent approximately 54.3 hours receiving, reviewing, and preparing correspondence. (Doc. # 124, at 17.) The board "acknowledges that most lawyers spend some amount of time reviewing the papers that

18

are filed and distributed in [a] case," but argues generally that "a responsible attorney would not bill his client a standard 0.2 for every piece of paper produced or generated by the case." (Doc. # 124, at 17.)  The Court does not find that the hours claimed for receiving, reviewing, and preparing correspondence are obviously and convincingly excessive under the circumstances.  Accordingly, these hours are included in the computation of the lodestar figure.

Fourth, the school board argues generally that it was patently excessive for Heinkel's counsel to spend forty-three hours on telephone conferences.  To the contrary, the Court finds that forty-three hours was not obviously and convincingly excessive under the circumstances.  These hours are also included in computing the lodestar figure.

Fifth, the school board identifies that Heinkel's lawyers spent approximately 200 hours preparing pleadings.  The board's choice of name for this category is somewhat misleading.  A review of the board's spreadsheet categorizing the hours shows that most of these hours were expended preparing court documents other than pleadings.[6]  In light of the board's general objection to Heinkel's claimed hours for preparing court documents, the Court cannot find that these hours are obviously and convincingly excessive under the circumstances.

---

[6]In fact, the Court's review of the school board's spreadsheet shows that only twenty of these hours were spent preparing the complaint and amended complaint.

19

As part of its more general objection, the board identifies two particular areas where it believes Heinkel's lawyers spent excessive time preparing court documents.  The first such area is the drafting of two memoranda of law, one in support of Heinkel's motion for preliminary injunction and the other in support of her motion for summary judgment.  The school board charges that Heinkel's attorneys simply reprinted in the summary judgment memorandum the legal argument from the memorandum in support of the preliminary injunction motion.  (Doc. # 124, at 17–18.)  Heinkel's attorneys' time records show 21.2 hours spent drafting the memorandum in support of Heinkel's motion for preliminary injunction.  (See Doc. # 122-2.)  These records show only 7.7 hours spent drafting the memorandum in support of Heinkel's motion for summary judgment.  (See Doc. # 122-2.)  These two memoranda are very similar, but they are not so similar that it was obviously and convincingly excessive for Heinkel's attorneys to spend 7.7 hours drafting the memorandum in support of Heinkel's motion for summary judgment.  This is especially true in light of the fact that attorneys are expected to take care in the preparation of arguments to the Court.

The second particular area where the board believes Heinkel's attorneys spent too much time preparing court documents is the drafting of Heinkel's appeal brief.  The board characterizes this brief as "nothing more than a rehashing of . . . earlier motions

20

for preliminary injunction and summary judgment." (Doc. # 124, at 18.)  For that reason, the board argues that it was excessive for Heinkel's lawyers to bill over thirty hours preparing the brief. Even if the board's characterization is fair, the Court cannot find these hours[7] obviously and convincingly excessive under the circumstances.

Finally, the board points to the declaration of Lamar Matthews as explaining further instances of excessive hours.  (Doc. # 124, at 18.)  In his declaration, Matthews opines that it was excessive for counsel to charge more than eight hours of travel time for a round trip between Orlando and Fort Myers.  (Doc. # 125, at 4.) The Court does not find these hours obviously and convincingly excessive.  Indeed, "[r]easonable travel time . . . ordinarily is compensated on an hourly basis, although the rate may be reduced if no legal work was performed during travel." Lambert v. Fulton Co., 151 F. Supp. 2d 1364, 1370 (N.D. Ga. 2000) (citing Johnson v. Univ. Coll., 706 F.2d 1205, 1208 (11th Cir. 1983)).

Matthews also surmises that the lengthy string of citations included in Heinkel's motion for attorney's fees represents excessive work.  (Doc. # 125, at 5.)  While the citations may be more than necessary, the hours claimed for producing the motion are not obviously and convincingly excessive.  The Court's review of

---

[7]According to the Court's review of Heinkel's billing records, Heinkel's attorneys spent thirty-five hours preparing the appeal brief.  (See Doc. # 122-2, at 30-34.)

Heinkel's time records shows that her attorneys devoted 10.8 hours to drafting the initial motion for attorney's fees. (See Doc. # 122-2, at 40-41.)  It appears that a certain amount of billing judgment was used in arriving at this figure, and it may well be that Heinkel's attorneys did not include the time it took them to find all the cases listed in their string of citations.  Because these hours are not obviously and convincingly excessive, they will be included in the computation of the lodestar.

In sum, the Court accepts as reasonable all the hours claimed by Heinkel except 1.1 hours of calendaring performed by the paralegal.  In reaching this decision, the Court gave deference to the sworn statements of Heinkel's attorneys.  Except for the 1.1 hours of calendaring, the other hours claimed by Heinkel's counsel simply were not obviously and convincingly excessive.  Thus, the lodestar will include a total of 493.4 hours.

## 2.  Reasonable Hourly Rate

In order to calculate the lodestar, the Court must now determine the reasonable hourly rate for Heinkel's attorneys.[8]  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Hous. Auth., 836 F.2d 1292, 1299 (11th Cir. 1988); accord ACLU

---

[8]The Court must also determine the reasonable rate for the paralegal and law clerk, whose work is also compensable.  See Missouri v. Jenkins, 491 U.S. 274, 285 (1989).

22

v. Barnes, 168 F.3d 423, 436 (11th Cir. 1999).  The relevant legal community is generally the place where the case is filed.  Barnes, 168 F.3d at 437.  "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims."  Id.

The fee applicant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates."  Norman, 836 F.2d at 1299.  To carry that burden, an applicant's evidence "necessarily must speak to the rates actually billed and paid in similar lawsuits."  Id.  "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence."  Id.; accord Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996).  The rate charged to paying clients, though, is likely the best evidence of a lawyer's market rate.  Dillard v. City of Greensboro, 213 F.3d 1347, 1354-55 (11th Cir. 2000).

Heinkel requests an hourly rate of $425 for Mathew Staver, $225 for Erik Stanley, $200 for Joel Oster, $175 for Anita Staver, $90 for the law clerk, and $85 for the paralegal.  (Doc. # 121, at 15.)  Heinkel supports these rates with declarations of her own counsel averring that these rates are reasonable.  (Doc. # 122, at 11; Doc. # 123, at 6.)  Heinkel further supports these rates with declarations from two other attorneys: Francis Manion and

23

Christopher Weiss.   Manion offers his opinion that the above attorney rates are reasonable for services of this type.[9]  (Doc. # 96, at 5.)  Manion avers that he is "familiar with cases similar to this, . . . familiar with attorneys of similar skills, experience, and reputation to that of Plaintiff's counsel, and . . . familiar with fees charged in these cases."  (Doc. # 96, at 2–3.)  The Court reads Manion's declaration as founding his opinion of the reasonableness of the requested billing rates on this stated familiarity.  Thus, the Court interprets Manion's declaration as stating generally that the requested rates are in line with prevailing market rates for similar work by similar attorneys. Even so, Manion's declaration is minimally persuasive because it does not address the relevant legal community and because it is so general.  It neither presents information as to the prevailing market rates in the relevant legal community nor provides detail as to the rates actually billed and paid in similar lawsuits.  As a result, the Court gives Manion's declaration little weight.

Weiss' declaration falls closer to the mark.  Weiss is an experienced attorney in private practice in Orlando, and he has litigated constitutional law cases up to the U.S. Supreme Court. (Doc. # 97, at 1.)   In addition to providing the general information provided by Manion, Weiss avers that his current rate

---

[9]Manion provides no opinion as to the rates requested for the law clerk or the paralegal.  (See Doc. # 96.)

for similar cases is $475 per hour.  (Doc. # 97, at 2.)  "This
compensation is based on time charged on an hourly rate basis for
bills actually submitted to clients and paid by them." (Doc. # 97,
at 2.)  Weiss also states that he "consider[s] Plaintiff's counsel
to be of comparable skill, experience and reputation as attorneys
whom [Weiss] ha[s] seen handle similar cases and who are
compensated in the range of $400 per hour to $500 per hour." (Doc.
# 97, at 2.)  Weiss opines that Heinkel's requested rates are
consistent with the prevailing market rates for the services
provided by her attorneys.  (Doc. # 97, at 2-3.)

    The school board argues that Weiss is not a proper expert to
give such an opinion because his practice focuses on commercial
litigation rather than on civil rights law.  (Doc. # 124, at 10.)
The Court rejects that argument.  Where it is difficult to
establish a prevailing market rate for the precise litigation at
issue, courts may look to analogous cases in determining the market
rate.  Norman v. Hous. Auth., 836 F.2d 1292, 1300 (11th Cir. 1988).
Thus, the Court does not reject Weiss' declaration out of hand
merely because civil rights law is not the focus of Weiss'
practice.  The board also suggests that Weiss' opinion should be
rejected because Weiss is an Orlando attorney and his opinion is
not tailored to the market in Southwest Florida.  (See Doc. # 124,
at 10-11.)  Nevertheless, the school board includes Tampa, Orlando,
St. Petersburg, Fort Myers, and Bradenton in its own discussion of

25

the local market.  (Doc. # 124, at 10 n.2.)  Accordingly, the Court gives due consideration to Weiss' opinion but accounts for the difference between the prevailing market rates in Orlando and Southwest Florida.

The school board offers its own opinion evidence on prevailing market rates.  The school board submits the affidavit of Lamar Matthews, an experienced attorney practicing principally in the Twelfth Judicial Circuit of Florida.  (Doc. # 125.)  Matthews opines that the hourly rates currently charged by top lawyers for complex work in Southwest Florida range from $250 to $350 per hour. (Doc. # 125, at 5-6.)  Matthews then lists his opinion of the reasonable hourly rates for Heinkel's attorneys: $325 for Mathew Staver, $175 for Erik Stanley, $150 for Joel Oster, $150 for Anita Staver, $75 for the law clerk, and $75 for the paralegal.  (Doc. # 125, at 6.)  Because Matthews' opinion specifically addresses the rates charged by similar lawyers for similar work in <u>Southwest Florida</u>, the Court gives this opinion significant weight.

The Court also looks to fee awards in similar cases.  In <u>Manning v. School Board of Hillsborough County</u>, the court determined "that the range of hourly rates in a complex civil rights class action for experienced attorneys . . . is $225.00 to $400.00, and for less experienced attorneys . . . $150.00 to $240.00."  135 F. Supp. 2d 1192, 1196 (M.D. Fla. 2001).  The court awarded fees using the bottom of each range, <u>id.</u> at 1197, which

were the rates fee counsel had requested, id. at 1194.  In American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, the court authorized an award that compensated the most senior attorney at a top rate of $325 per hour.  278 F. Supp. 2d 1301, 1313 (M.D. Fla. 2003).  Thus, it appears other courts in this judicial district have determined that the reasonable hourly rates for experienced attorneys in complex civil rights cases range between $225 and $400 per hour.

Based on its own evaluation of counsel's performance in this case, and on the evidence before it, the Court concludes that the following hourly rates are reasonable for the work in this case. For Mathew Staver, a reasonable hourly rate is $325.  Matthews' opinion specifically addresses Southwest Florida and concludes that the appropriate rate for Staver is $325.  Other courts in this district have determined that rates range from $225 to $400 in comparable situations.  However, the Court has not found any case in this district approving an award calculated at a rate higher than $325 per hour.  Synthesizing this, the Court concludes that the rate for Staver should be set at the rate identified by Matthews.  Thus, the Court computes the lodestar using $325 as the rate for Staver.  As for the other attorneys and support staff, Matthews' declaration represents the strongest evidence because it is specifically tailored to Southwest Florida.  As a result, the Court accepts these rates as reasonable.

### 3.   The Lodestar

Having determined the reasonable number of hours expended in this litigation and the reasonable hourly rates, the Court computes the lodestar as $104,695.  Calculations are shown below:

| Attorney | Rate | Hours | Fee |
|----------|------|-------|-----|
| Mathew Staver | $325 | 157.9 | $51,317.50 |
| Erik Stanley | $175 | 188.1 | $32,917.50 |
| Joel Oster | $150 | 123.6 | $18,540 |
| Anita Staver | $150 | 0.6 | $90 |
| Law Clerk | $75 | 12.1 | $907.50 |
| Paralegal | $75 | 12.3 | $922.50 |
| **TOTAL:** | | | **$104,695** |

### C.   Adjustment to the Lodestar

"After determining the lodestar amount . . . , the court is entitled to adjust the amount of final fees awarded in light of the results obtained through the litigation." Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Norman v. Hous. Auth., 836 F.2d 1292, 1302 (11th Cir. 1988)).  Thus, a court may adjust the lodestar downward to reflect only partial or limited success.  Id.  A small private benefit to a particular plaintiff may not warrant a downward adjustment, though, where the litigation accomplishes a public purpose.  See id. ("[W]hen a constitutional right is vindicated, the fact that the monetary result was small may not

28

always control.  This is particularly the case where the outcome promotes some public purpose." (internal quotation marks and alterations omitted)); <u>Norman</u>, 836 F.2d at 1302 ("The vindication of a constitutional right is important even if only a small amount of money is involved.").  Where the litigation achieves "specific spillover benefits for non-parties," courts may view the public benefit as a principal factor in determining whether and to what extent the lodestar should be adjusted.  <u>Popham v. City of Kennesaw</u>, 820 F.2d 1570, 1580 (11th Cir. 1987).

Indeed, Congress' purpose in enacting § 1988 was to promote vindication of congressional policy through private litigation under the "private attorney general" theory.  <u>See</u> <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 793 (1989) (noting that Congress meant to promote the private attorney general theory in enacting § 1988); S. Rep. No. 94-1011, at 3-4 (1976), <u>reprinted in</u> 1976 U.S.C.C.A.N. 5908, 5910-12 (recommending passage of § 1988, and explaining private attorney general theory as justification).  Under this theory, individual plaintiffs sue not only for their own private benefit but as private attorneys general, vindicating a congressional policy in the public interest.  <u>See</u> <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 575 (1986) ("Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone but also as a private attorney general, vindicating a policy that Congress

29

considered of the highest importance." (internal quotation marks omitted)). Because much of the benefit of such lawsuits goes to the public at large, rather than to the individual plaintiff, many individual plaintiffs would find it uneconomic to pay the entire cost of the litigation.

The school board argues that the fee award should be adjusted downward from the lodestar because Heinkel did not achieve her primary private goal. (Doc. # 124, at 18.) Specifically, the board explains that "[t]his case was about Heinkel's desire to distribute literature to other students on school property." (Doc. # 124, at 18.) Because Heinkel failed to achieve that goal, the fee should be reduced to account for no more than 200 hours. (Doc. # 124, at 19.) The Court declines this request, and finds that a downward adjustment is not warranted.

Heinkel's litigation accomplished an important public purpose, with specific spillover benefits to non-party students in Lee County public schools. The Court views this public benefit as principally important in its calculation of an adjustment to the lodestar. In Duckworth v. Whisenant, the Eleventh Circuit refused to reduce the lodestar in a case alleging that a police officer used excessive force against a prisoner. 97 F.3d 1393, 1399 (11th Cir. 1996). Though the plaintiff received an award of only $500 against the officer's municipal employer, id. at 1395, the court determined that the litigation produced a public benefit by

revealing that the municipality tacitly condoned excessive force and related misbehavior, id. at 1399.  For that reason, the Eleventh Circuit awarded the entire lodestar of $162,209.50.  See id. at 1400.  Similarly, Heinkel should receive the entire lodestar fee.  Bearing in mind the important public benefit this litigation has produced, no reduction is warranted.  The Court has carefully considered the relationship between the lodestar fee of $104,695 and the results obtained in this litigation.  The Court determines that the lodestar represents a reasonable fee in this case.  Thus, the Court awards a fee of $104,695.

### D.  Reduction of Hours Spent on Claim of Cordray

The Eleventh Circuit denied Heinkel's motion to the extent it seeks attorney's fees on behalf of Cordray.  (Doc. # 105.)  This Court directed Heinkel to file an amended motion for attorney's fees in light of the Eleventh Circuit's order.  (Doc. # 119.)  This amended motion reflected a decrease of 3.5 hours.  (Doc. # 121, at 1.)  The board represents that it has found in Heinkel's fee request 25.6 hours of work done in furtherance of Cordray's claim. (Doc. # 124, at 19.)  The board proposes that the Court now cut these hours.  The Court declines this request for the reasons stated below.

The Court has reviewed the board's itemization of hours spent on Cordray's claim.  (Doc. # 124-6.)  Many such hours have already been cut from Heinkel's fee application.  Additionally, one large

31

line-item identified by the board does not even appear in Heinkel's billing records. The board identified 5.1 hours of legal research on June 28, 2005. (Doc. # 124-6, at 3.) This entry does not appear in Heinkel's billing records. (See Doc. # 122-2, at 29.) All other hours identified by the board were sufficiently intertwined with Heinkel's claims in this litigation that they are not subject to being cut.

**E.   Costs**

Title 28 U.S.C. § 1920 authorizes an award of six categories of costs. In addition, § 1988 permits recovery of further expenses on the theory that such expenses are subsumed within the concept of a reasonable attorney's fee. See Dowdell v. City of Apopka, 698 F.2d 1181, 1190-92 (11th Cir. 1983) (reasoning that policy of § 1988 requires full compensation of attorneys, to include reasonable expenses); accord Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000) (noting that some expenses should be included in concept of attorney's fee); cf. Stewart v. Town of Zolfo Springs, No. 96-1142, 1998 U.S. Dist. LEXIS 20914, at *6 (M.D. Fla. Sept. 15, 1998) (explaining that costs beyond those recoverable under § 1920 should be pursued under governing attorney fee statute). Thus, § 1988 authorizes the award of all reasonable expenses that would ordinarily be billed to a client. Dowdell, 698 F.2d at 1192 ("We hold that, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses

incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988."); accord ACLU v. Barnes, 168 F.3d 423, 438 (11th Cir. 1999).  This is a liberal standard.  Dowdell, 698 F.2d at 1192.  "The guideline on what is includable must be that which is appropriate in the context of the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted."  Id.

Heinkel requests an award $5,376.44 in costs.  She includes an item-by-item explanation of these costs as part of her attorneys' billing records.  (Doc. # 122-2, at 45-48.)  The school board asserts that any award of costs should be only for $2,122.63.  (Doc. # 124, at 20.)  The board advances two arguments.  First, it claims that Heinkel seeks costs not authorized by § 1920.  The Court rejects this argument.  Expenses that cannot be shifted under § 1920 may still form part of a cost award under § 1988.  See Brown, 227 F.3d 1278, 1297 (10th Cir. 2000) (explaining that certain costs are incidental to effective representation and may be awarded under § 1988, while other costs, paid to third-parties such as interpreters and stenographers, are governed by § 1920).

Second, the school board argues that Heinkel has failed to provide sufficient information about her claimed expenses.  (Doc. # 124, at 20.)  Inasmuch as this is a general objection to all claimed expenses, the objection is inadequate.  See Am. Charities

for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 278
F. Supp. 2d 1301, 1329 (M.D. Fla. 2003) (rejecting non-specific,
blanket objection).  However, the school board is more specific in
its objection to two categories of expenses.  The board objects
that Heinkel does not include any "notation of the purpose or use
of the copies or courier service."  (Doc. # 124, at 20.)  Indeed,
Heinkel's explanation of costs includes an undated entry for
"Copying Costs" amounting to $289.50.  (Doc. # 122-2, at 45.)  The
school board was entitled to an explanation of the purpose of these
copying charges.  See Am. Charities, 278 F. Supp. 2d at 1330
(disallowing copying expenses where cost was "substantial" --
$486.25 -- and no explanation was given for the purpose of the
copying).  Because Heinkel did not provide such an explanation, the
Court denies these costs.  Heinkel's itemization of costs includes
numerous small, dated entries for "Courier Costs."  (Doc. # 122-2,
at 45-47.)  However, Heinkel gives no explanation of the purpose of
the courier services.  The school board was entitled to an
explanation of the purpose of the courier services also, and the
Court therefore denies these expenses.

In addition, the board identifies three more categories of
expenses as "unexplained."  (Doc. # 124, at 20.)  First, there is
an entry for "Attorney Costs" in the amount of $740.65.  (Doc. #
122-2, at 46.)  This entry truly is unexplained, and the Court
therefore denies this expense.  Next, the board points to a $739.15

34

entry for "Depositions of Ms. Tutko & Mr. Browder." This entry suffers from the same problem, and the Court must deny this expense. Last, the board argues that the travel expenses are unexplained. Heinkel's lawyers have listed the purpose for all travel expenses claimed on the itemization. The Court finds that these expenses are sufficiently explained. Moreover, these expenses are reasonable. Consequently, these expenses are allowed.

The school board raises one last argument. It points specifically to Heinkel's application for computerized legal research charges and argues that these charges should not be allowed. For this, the board cites <u>Allen v. Freeman</u>, 122 F.R.D. 589 (S.D. Fla. 1988). Instead of holding that computerized legal research charges are disallowed, the <u>Allen</u> court noted that such charges <u>are normally allowed</u>. <u>Allen</u>, 122 F.R.D. at 591 ("The costs normally included within the attorneys' fees award [include] computerized legal research." (citation omitted)). Consequently, the Court rejects this argument, and allows these costs.

In summary, the Court disallows as insufficiently explained $289.50 in copying costs, $493.10 in courier costs, $740.65 in attorney costs, and $739.15 in deposition costs. When these amounts are subtracted from the $5,376.44 Heinkel requests, the result is $3,114.04. The Court awards this amount in costs.

**IV.  Conclusion**

For the reasons stated, the Court awards Heinkel $104,695 in

attorney's fees and $3,114.04 in related expenses and costs.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1.   Plaintiff's Amended Motion and Memorandum for Attorney's Fees and Costs (Doc. # 121) is **GRANTED.**

2.   The School Board of Lee County, Florida, shall pay to Heinkel $104,695 in attorney's fees and $3,114.04 in expenses and costs.

3.   The Clerk shall enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida, this <u>20th</u> day of September 2007.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record